Rabin Nabizadeh (SBN #235978)
SUMMIT DEFENSE, APC
1970 Broadway, Ste 1145,
Oakland, CA 94612-2210
TEL: (510) 735-6544
Fax: (510) 735-6544
Email: rabin@summitdefense.com

Jonathan C. Do, Esq. (SBN 184020)
FUSION LAW, APC
1150 Murphy Avenue, Suite 240
San Jose, CA  95131
Tel: (408)287-4444
Email:  jonathando@comcast.net
Specially Appearing for Defendant John Doe

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORIA

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>　　　　Plaintiff,<br>　vs.<br><br>JOHN DOE, subscriber assigned IP address 107.208.9.165<br><br>　　　　Defendant | Case No.: 3:19-CV-00723-JCS<br><br>DEFENDANT JOHN DOE'S REQUEST FOR JUDICIAL NOTICE |

　　　Defendant JOHN DOE, subscriber assigned IP address 107.208.9.106 move pursuant to FED . R. EVID §201 for an Order taking judicial notice of the following court decisions and newspaper publication because A Court may take judicial notice of adjudicative facts that are not subject to reasonable dispute where (1) they are generally known within the Court's territorial jurisdiction; or (2) they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

6

1/ Newspapar Article published by SFGAte, on July 15, 2011, " Lawsuit says grandma illegally downloaded porn", attached hereto as Exhibit A.

2/ <u>Strike 3 Holdings, LLC v Doe</u>, Case No.: 18-1425 (District of Columbia November 16, 2018), attached hereto as Exhibit B.

3/ <u>Strike 3 Holdings, LLC vs Doe</u>, Case No.: 18cv1355-JLS(KSC), SD Cal, March 21, 2019, attached hereto as Exhibit C.

Dated: 5/27/2019          Respectfully submitted,

_____
Jonathan C. Do , Esq.

7

# EXHIBIT A

Case 3:19-cv-00723-JCS   Document 19-1   Filed 05/28/19   Page 4 of 19

**SFGATE**
https://www.sfgate.com/business/article/Lawsuit-says-grandma-illegally-downloaded-porn-2354720.php

# Lawsuit says grandma illegally downloaded porn

## Lawsuit says grandma downloaded online porn

**By James Temple**   Published 4:00 am PDT, Friday, July 15, 2011



Jane is in her 70s, a retired widow who spends her days doing volunteer work in the East Bay and fussing over her grandchildren. She also downloads porn illegally over BitTorrent.

That, at least, is the claim in an April lawsuit against her and dozens of other Jane and John Does by a Chicago law firm that's been busily filing similar cases around the country.

**RECOMMENDED VIDEO**

It's also made a habit of strongly suggesting that these

"digital pirates" settle out of court for several thousand dollars. Letters to defendants helpfully remind them the amount is below what they'd probably pay in attorney's fees and that settling would avoid publicly linking their names to pornography.

This particular Jane (who didn't want her real name used for that very reason) said she's never downloaded porn and doesn't know what a BitTorrent is. She can't afford an attorney to make her case, but she's not about to settle either.

"It smacks of extortion," she said.

Some legal observers agree.

**Steele Hansmeier** PLLC filed the case against "Does 1-46" in U.S. District Court in San Francisco on behalf of Hard Drive Productions. The growing law firm has now lodged complaints on behalf of adult companies against about 10,000 defendants, partner John Steele said.

When asked about the allegations that their tactics amount to a shakedown, Steele said his firm is simply fighting back against the widespread copyright theft that threatens to put his clients out of business.

Other porn companies, media businesses and law firms have embraced similar strategies, which San Francisco digital rights group **Electronic Frontier Foundation** describes as "copyright trolling."

## Low settlement fees

The mass filings, embarrassing allegations and low settlement fees are all carefully calibrated to get people to pay up, regardless of whether they've done anything wrong, said **Matt Zimmerman**, senior staff attorney at the Electronic Frontier Foundation.

"It puts these defendants in a tough spot, especially with the coercive element of the porn allegation," he said.

The June letter to Jane emphasized that copyright owners can recover up to $150,000 in

damages per file. It mentions the possibility of naming her several times. And it invited her to quickly and quietly settle matters by paying $3,400 via credit card.

A law firm representative followed up with a direct phone call to Jane just before the settlement offer expired.

To be clear, many - and maybe even most - of those accused in these cases probably downloaded the files. But it's easy to imagine scenarios where some didn't, yet still feel pressured to settle.

Like, say, a widow in her 70s who, when asked by a reporter, didn't know whether her wireless Internet service was password protected. She did know, however, that a handful of young men lived next door.

The letter from Steele suggests that someone else using an unsecured wireless network isn't a viable legal defense for the account holder, noting that downloaders of child pornography have employed this excuse to no avail.

But that's deliberately misleading, Zimmerman said.

"There is no legal doctrine that says you're responsible for what somebody else does on your Internet connection," he said.

In fact, there are examples of the precise opposite occurring.

## Open networks

Earlier this year, charges were dropped against a man in Buffalo, N.Y., accused of downloading child pornography, after police turned their attention to a neighbor allegedly using the man's open Wi-Fi network.

Jane said she'll go to trial without an attorney if necessary and "throw herself on the mercy of the court."

"I'd say to the judge, 'I have no idea how this happened,' " she said. "If Sony can get hacked, if the **Pentagon** can get hacked, my goodness, what chance does an individual have?"

But **Steele's** not buying such excuses. In an interview, he said anyone who fails to secure their Wi-Fi is as responsible for the subsequent crimes or tragedies as a parent who leaves a loaded gun within reach of a 3-year old.

Of course, nobody dies when the teenager next doors nabs a wireless signal for a glimpse of breasts.

None of the cases pursued by Steele Hansmeier has reached a final verdict at trial, but the firm has moved forward with claims against individuals, Steele said. Most people simply decide to settle, he added.

Steele stressed that the vast majority of these people have committed a crime and the few who haven't have every opportunity to defend themselves.

"There's no sort of sneaky, in-the-shadows efforts here," he said.

Dot-commentary runs Wednesdays, Fridays and Sundays. Follow @jtemple on Twitter or e-mail **jtemple@sfchronicle.com**.

© 2019 Hearst Communications, Inc.

**H E A R S T**

# EXHIBIT B

Civil Case No. 18-1425
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

# Strike 3 Holdings, LLC v. Doe

Decided Nov 16, 2018

Royce C. Lamberth United States District Judge

**MEMORANDUM OPINION**

Strike 3 Holdings, LLC produces "award winning, critically acclaimed adult motion pictures." Compl. ¶ 2. Or, as the *Miami Herald* describes, it is "[t]he Steven Spielberg of porn." Adiel Kaplan, *The Steven Spielberg of Porn Sues to Make Floridians Stop Pirating His Raunchy Videos*, Miami Herald (July 12, 2018, 4:48 PM), https://www.miamiherald.com/news/local/article214634930.html.

2  Strike 3 is also a copyright troll. Its swarms of lawyers hound people who allegedly watch their content through Bittorrent, an online service enabling anonymous users to share videos despite their copyright protection. Since Bittorrent masks users' identities, Strike 3 can only identify an infringing Internet protocol (IP) address, using geolocation technology to trace that address to a jurisdiction. This method is famously flawed: virtual private networks and onion routing spoof IP addresses (for good and ill); routers and other devices are unsecured; malware cracks passwords and opens backdoors; multiple people (family, roommates, guests, neighbors, etc.) share the same IP address; a geolocation service might randomly assign addresses to some general location if it cannot more specifically identify another. *See, e.g.*, James Temple, *Lawsuit *2 Says Grandma Illegally Downloaded Porn*, S.F. Chron. (July 15, 2011, 4:00 AM), https://www.sfgate.com/business/article/Lawsuit-says-grandma-illegally-downloaded-porn-2354720.php. Simply put, inferring the person who pays the cable bill illegally downloaded a specific file is even less trustworthy than inferring

they watched a specific TV show. But in many cases, the method is enough to force the Internet service provider (ISP) to unmask the IP address's subscriber. And once the ISP outs the subscriber, permitting them to be served as the defendant, any future Google search of their name will turn-up associations with the websites *Vixen*, *Blacked*, *Tushy*, and *Blacked Raw*. The first two are awkward enough, but the latter two cater to even more singular tastes.

Little wonder so many defendants settle. Indeed, the copyright troll's success rate comes not from the Copyright Act, but from the law of large numbers. According to PACER, over the past thirteen months, Strike 3 has filed 1849 cases just like this one in courts across the country—forty in this district alone—closely following the copyright trolls who together consumed 58% of the federal copyright docket in 2015. These serial litigants drop cases at the first sign of resistance, preying on low-hanging fruit and staying one step ahead of any coordinated defense. They don't seem to care about whether defendant actually did the infringing, or about developing the law. If a Billy Goat Gruff moves to confront a copyright troll in court, the troll cuts and runs back under its bridge. Perhaps the trolls fear a court disrupting their rinse-wash-and-repeat approach: file a deluge of complaints; ask the court to compel disclosure of the account holders; settle as many claims as possible; abandon the rest. *See* Matthew Sag & Jake Haskell, *Defense Against the Dark Arts of Copyright Trolling*, 103 Iowa L. Rev. 571, 575-80 (2018); *see also infra* text accompanying notes 1-4.

*3 Here, that approach led Strike 3 astray. Because Strike 3's need for discovery does not outweigh defendant's privacy expectation, the Court will deny Strike 3's ex parte motion to subpoena defendant's ISP to discover defendant's identity prior to the 26(f) conference. That sunders Strike 3's entire case, since a failure to identify defendant makes effectuating service impossible. So the Court will dismiss this case without prejudice.

## I. Strike 3 cannot subpoena defendant's ISP because its discovery request lacks sufficient specificity and does not overcome defendant's privacy expectation.

Strike 3's request for early discovery falls short of Rule 26's requirements. A plaintiff can only discover an unknown defendant's identity through a court order under Rule 26(d)(1). But the rule cabins a district court's discretion to order discovery to circumstances where a plaintiff shows good cause. *See* Fed. R. Civ. P. 26(b)(1). And to show good cause, the D.C. Circuit requires establishing likely personal jurisdiction. *AF Holdings*, *LLC v. Does 1-1058*, 752 F.3d 990, 995 (D.C. Cir. 2014). Here, Strike 3 clears that hurdle. *See id*. at 996 (suggesting using geolocation services to track an infringing IP address to D.C. justifies a good-faith belief this court has personal jurisdiction).

Yet the D.C. Circuit never said that was the only requirement. For one, the Court must also balance Strike 3's need for discovery with a potentially-noninfringing defendant's right to be anonymous. Only the Second Circuit has articulated this balance, looking to the plaintiff's showing of a prima facie claim of actionable harm; their discovery request's specificity; their alternative means to obtain the subpoenaed information; the need for the subpoenaed information to advance the claim; and the objecting party's privacy expectation. *Arista Records*, *LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) (citing *Sony Music Entm't Inc*. *v. Does 1-40*, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2004) (Chin, J.)); *see also*, *e.g.*, *Call of the Wild Movie*, *LLC v. Does 1-* *4 1,062*, 770 F. Supp. 2d 332, 351 (D.D.C. 2011) (Howell, J.) (applying this test); *Arista Records v. Does 1-19*, 551 F. Supp. 2d 1, 8 (D.D.C. 2008) (Kollar-Kotelly, J.) (same).

One can hardly blame the D.C. Circuit for its silence. Of the forty cases Strike 3 has filed in this district (including seven on a single day), none have reached the Court of Appeals. Twenty-two have been voluntarily dismissed, all but one following the same formula: Strike 3 files a complaint (identical in every case except for the infringing IP address). A few weeks later, Strike 3 files a motion to subpoena the anonymous defendant's ISP prior to the Rule 26(f) conference (identical in every case except for the particular ISP to be served—Comcast, Verizon, or RCN). Satisfied by Strike 3's showing of likely personal jurisdiction, the court grants the motion, usually providing at least twenty days for the defendant to move to quash the subpoena, and sometimes providing for defendant's continued anonymity. Nothing happens for a few weeks, and then Strike 3 voluntarily dismisses the suit.[1] In the lone exception, Civil Case No. 18-810, the defendant successfully obtained the court's approval to proceed anonymously, and appeared to be preparing a responsive pleading—but Strike 3 dropped the case. The eighteen pending cases are no different: in twelve, the judge recently granted the early discovery motion and Strike 3 is waiting for the ISP to respond[2]; in five, Strike 3's early discovery motion remains pending[3]; and in one, Strike 3 hasn't yet filed its discovery motion.[4] This sounds crazy, but its par for the copyright-trolling course. According to PACER, Malibu Media, LLC —another adult *5 film company—filed 150 cases against anonymous defendants in this district (7183 nationally) from 2012 to 2018, some joining dozens of individuals. How many of those cases reached the Court of Appeals? Zero.

---

[1] Civil Case Nos. 17-2338, 17-2342, 17-2344, 17-2345, 17-2346, 17-2347, 18-536, 18-537 (allowing defendant to anonymously move to quash), 18-804, 18-805 (allowing defendant to move to proceed anonymously), 18-806, 18-807

casetext

(requiring the defendant's anonymity until further court order), 18-808, 18-1193, 18-1197 (prohibiting Strike 3 or the ISP from publicly revealing the defendant's identity), 18-1199 (allowing defendant to move to proceed anonymously), 18-1424, 18-1426, 18-1430, 18-1432, 18-1894.

[2] Civil Case Nos. 18-1192 (allowing defendant to move to proceed anonymously), 18-1198 (allowing defendant to move to proceed anonymously), 18-1427, 18-1429, 18-1431, 18-1898 (requiring the defendant's anonymity until further court order), 18-1899, 18-1902, 18-1903 (allowing defendant to move to proceed anonymously), 18-1904 (requiring the defendant's anonymity until further court order), 18-2205, 18-2206.

[3] Civil Case Nos. 18-1425 (this case), 18-2204, 18-2210, 18-2211, 18-2212.

[4] Civil Case No. 18-1896.

Although the D.C. Circuit has never had the chance to elaborate on its test, the undersigned considers the Second Circuit's test very persuasive. And not for nothing, it comports with the D.C. Circuit's more general observation that, when evaluating good cause under Rule 26, "interests in privacy may call for a measure of extra protection." *In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1215 (D.C. Cir. 2004) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 26(b) advisory committee's note (1970)). "Moreover, in determining which interests to weigh in the Rule 26 balance, courts look to statutory confidentiality provisions, even if they do not create enforceable privileges." *Id*. at 1215-16. In this case, the Court looks to the Communications Act, which protects cable subscribers' names and addresses. 47 U.S.C. § 551(c). *But cf. id*. at (c)(2)(B) (providing for disclosure "pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed").

Applying the Second Circuit's test, and placing great weight on defendant's privacy expectation, the Court will deny Strike 3's motion for early discovery. To be sure, Strike 3's alleged ownership of an infringed copyright sets forth a prima facie claim. So too is the requested information necessary to advance Strike 3's claim, just as subpoenaing the ISP is necessary to get the information.

But Strike 3's request lacks the type of specificity the Second Circuit's test requires: that the request will identify a copyright infringer who can be sued. *See Sony Music*, 326 F. Supp. 2d at 566; *see also Soo Park v. Thompson*, 851 F.3d 910, 928 [6] n.21 (9th Cir. 2017) ("[I]n *6 circumstances 'where the identity of alleged defendants will not be known prior to the filing of a complaint . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear . . . that the complaint would be dismissed on other grounds.'" (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642-43 (9th Cir. 1980))). Strike 3 could not withstand a 12(b)(6) motion in this case without resorting to far more intensive discovery machinations sufficiently establishing defendant did the infringing—examining physical evidence (at least the computers, smartphones, and tablets of anyone in the owner's house, as well as any neighbor or houseguest who shared the Internet), and perhaps even interrogatories, document requests, or depositions. Strike 3's requested subpoena thus will not—and may never—identify a defendant who could be sued.

Similarly, even though "defendants have little expectation of privacy in downloading and distributing copyrighted [content] without permission," *Sony Music*, 326 F. Supp. 2d at 566-67, Strike 3 fails to give the Court adequate confidence this defendant actually did the infringing. Given this uncertainty, Strike 3 cannot overcome defendant's weighty privacy expectation. Imagine having your name and reputation publicly—and permanently—connected to websites like *Tushy* and *Blacked Raw*. (Google them at your own risk.) How would an improperly accused defendant's spouse react? His (or her)

casetext

boss? The head of the local neighborhood watch? The risks of a false accusation are real; the consequences are hard to overstate and even harder to undo. And Strike 3's flawed identification method cannot bear such great weight. Defendant may not be entitled to the same presumption of innocence a criminal defendant enjoys, but the Court remains uncomfortable publicly presupposing defendant partook in particularly prurient pornography given defendant's tenuous connection to the infringement. Since Strike 3's *7 discovery request lacks the required specificity and does not overcome defendant's privacy expectation, the Court will deny Strike 3's motion for early discovery.

Though Strike 3 admits a protective order could allow defendant to anonymously challenge the subpoena, Br. at 8, that hardly seems fair. That drags defendant into court and foists on them the unenviable burden of hiring a lawyer or defending their reputation pro se, all before they've even been served. That's not how our system of litigation is supposed to work. Moreover, the inconsistency with which courts permit defendants to proceed anonymously illustrates the ineffectiveness of this shield more generally. *See supra* notes 1-2 and accompanying text.

An honest copyright holder might balk at this result, misunderstanding it to slash congressionally endowed defenses against increasingly creative and covert cyberpirates. But the typical case does not involve pornography,[5] nor is this even run-of-the-mill porn. By extension, two factors limit today's holding. First is this content's aberrantly salacious nature. Second is the legion pitfalls associated with Strike 3's tracking and identification of infringers. Given these high stakes—unlikely to appear in more typical cases—the Court will not accept the risk of misidentification. Maybe someday someone will show the Court a method to identify infringers with sufficiently less risk of false accusations. But because Strike 3 fails to do so here, it cannot subpoena defendant's ISP. *8 **II. Because Strike 3 cannot effectuate service without subpoenaing defendant's ISP, its case must be dismissed.**

[5] The Court notes "it is unsettled in many circuits"—including this one—"whether pornography is in fact entitled to protection against copyright infringement." *Liberty Media Holdings, LLC v. Swarm Sharing Hash File*, 821 F. Supp. 2d 444, 447 (D. Mass. 2011); *see also Next Phase Distb., Inc. v. John Does 1-27*, 284 F.R.D. 165, 171 (S.D.N.Y. 2012) ("[I]f the Motion Picture is considered obscene, it may not be eligible for copyright protection."). *But see Jartech, Inc. v. Clancy*, 666 F.2d 403, 406 (9th Cir. 1982) (extending copyright protection to pornography); *Mitchell Brothers Film Group v. Cinema Adult Theater*, 604 F.2d 852, 854-58 (5th Cir. 1979) (same). --------

Denying Strike 3's discovery motion dooms its claim. Simply put, Strike 3's inability to identify defendant makes effectuating service or prosecuting the case impossible. So because Strike 3 cannot proceed with its claim, the Court dismisses it.

Strike 3 does not dispute this logic. It concedes "[d]efendant must be identified before this suit can progress." *See* Br. at 5-6 (internal quotation marks omitted) (quoting *Malibu Media, LLC v. Doe*, 177 F. Supp. 3d 554, 556 (D.D.C. 2016)). But "[w]ithout information from the ISP," Strike 3 admits it cannot "correlate the [infringing] IP address to its subscriber and identify Defendant as the person assigned the IP address." Br. at 6 (internal quotation marks omitted) (quoting *Strike 3 Holdings v. Doe*, No. 17-1680, 2017 WL 5001474, at *4 (D. Conn. Nov. 1, 2017)). And so Strike 3 "cannot name and serve those whom they allege to have infringed upon their copyrights." Br. at 6 (internal quotation marks omitted) (quoting *Call of the Wild Movie, LLC*, 770 F. Supp. 2d at 352-53).

Strike 3's lone rebuttal points out that "courts have rejected the dismissal of suits against unnamed defendants . . . until the plaintiff has had some

casetext

opportunity for discovery to learn [the defendants'] identities." Br. at 6 (alterations in original) (internal quotation marks omitted) (quoting *Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998)); *see also* Br. at 6 (quoting *Malibu Media, LLC v. Doe*, No. 15-986, 2015 WL 5173890 at *1 (D.D.C. Sept. 2, 2015)). But as this opinion has already explained, this case is exceptional, limited as Part I describes. Because Strike 3 chases a dead-end, the Court will deny as moot Strike 3's motion to extend the service deadline and dismiss the case.

## *9 III. Conclusion

Armed with hundreds of cut-and-pasted complaints and boilerplate discovery motions, Strike 3 floods this courthouse (and others around the country) with lawsuits smacking of extortion. It treats this Court not as a citadel of justice, but as an ATM. Its feigned desire for legal process masks what it really seeks: for the Court to oversee a high-tech shakedown. This Court declines.

The Court denies Strike 3's ex parte motion [3] for discovery prior to the Rule 26(f) conference. Since this makes serving the defendant impossible, the Court denies as moot Strike 3's motion [4] extending time to effectuate service and dismisses the case without prejudice. An accompanying order will issue. Date: November 16, 2018

/s/_____

Royce C. Lamberth

United States District Judge

9

casetext

# EXHIBIT C

Case No.: 18cv1355-JLS(KSC)
UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

# Strike 3 Holdings, LLC v. Doe

Decided Mar 21, 2019

Hon. Karen S. Crawford United States Magistrate Judge

ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S EX PARTE APPLICATION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE [Doc. No. 4]

Before the Court is plaintiff's *Ex Parte* Application for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference. [Doc. No. 4.] No opposition or reply briefs have been filed or considered by the Court, because defendant has not been fully identified and has not been served with a summons or the Complaint. Thus far, defendant has only been identified as the "subscriber assigned IP address 99.26.127.96." [Doc. No. 1.] For the reasons discussed below, the Court finds that plaintiff's *Ex Parte* Application must be DENIED without prejudice. / / / / / /

2  *2 ## Background

Plaintiff filed a Complaint against defendant alleging a single cause of action for direct copyright infringement. [Doc. No. 1, at pp. 6-8]. In the Complaint, plaintiff asserts ownership of copyrights for adult motion pictures that are distributed through adult websites and DVDs. [Doc. No. 1, at pp. 1-2, 6.] The Complaint alleges that the defendant is using BitTorrent protocol to download and distribute plaintiff's motion pictures to others "on a grand scale." [Doc. No. 1, at p. 2.] The Complaint further alleges that defendant "downloaded, copied, and distributed a complete copy" of plaintiff's copyrighted movies "without authorization." [Doc. No. 1, at p. 6.] According to the Complaint, defendant's "infringement is continuous and ongoing" and the lawsuit is the only way to effectively prevent defendant from infringing the copyrights. [Doc. No. 1, at p. 6.]

The Complaint explains that "BitTorrent is a system designed to quickly distribute large files over the Internet. Instead of downloading a file, such as a movie, from a single source, BitTorrent users are able to connect to the computers of other BitTorrent users in order to simultaneously download and upload pieces of the film from and to other users." [Doc. No. 1, at p. 4.] "To use BitTorrent to download a movie, the user has to obtain a 'torrent' file for that movie, from a torrent website. The torrent file contains instructions for identifying the Internet addresses of other BitTorrent users who have the movie, and for downloading the movie from those users. Once a user downloads all of the pieces of that movie from the other BitTorrent users, the movie is automatically reassembled into its original form, ready for playing." [Doc. No. 1, at p. 4.]

## Discussion

In the *Ex Parte* Application, plaintiff seeks leave to serve limited, immediate discovery on defendant's Internet Service Provider ("ISP"), AT&T Inc. and/or AT&T U-verse, so that plaintiff may learn defendant's identity. [Doc. No. 4-1, at pp. 6-7]. Specifically, plaintiff seeks an order permitting it to serve a Rule 45 subpoena on AT&T Inc. (AT&T U-verse) to obtain the name and address of the account holder assigned to Internet Protocol ("IP") address 99.26.127.96. [Doc. No. 4-1, at pp. 6-7.]

3   *3 Generally, discovery is not permitted without a court order before the parties have conferred pursuant to Federal Rule of Civil Procedure 26(f). Fed. R. Civ. P. 26(d)(1). In the Ninth Circuit, exceptions to requests for early discovery have generally been disfavored. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). However, "situations arise, such as the present, where the identity of alleged defendants will not be known prior to the filing of a complaint. In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Id*.

"[S]ome limiting principals should apply to the determination of whether discovery to uncover the identity of a defendant is warranted." *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999). Such early discovery should be limited "to ensure that this unusual procedure will only be employed in cases where the plaintiff has in good faith exhausted traditional avenues for identifying a civil defendant pre-service" and to "prevent use of this method to harass or intimidate." *Id*. "First, the plaintiff should identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court." *Id*. Second, the plaintiff "should identify all previous steps taken to locate the elusive defendant" to ensure that the plaintiff has made a good faith effort to identify and serve process on the defendant. *Id*. at 579. Third, the "plaintiff should establish to the Court's satisfaction that plaintiff's suit against defendant could withstand a motion to dismiss." *Id*. "Thus, plaintiff must make some showing that an act giving rise to civil liability actually occurred and that the discovery is aimed at revealing specific identifying features of the person or entity who committed that act." *Id*. at 580.

"Lastly, the plaintiff should file a request for discovery with the Court, along with a statement of reasons justifying the specific discovery requested as well as identification of a limited number of persons or entities on whom discovery 4   process might be served and *4 for which there is a reasonable likelihood that the discovery process will lead to identifying information about defendant that would make service of process possible." *Id*.

### A. *Identification of the Defendant with Sufficient Specificity* .

In support of the *Ex Parte* Application, plaintiff submitted three relevant declarations. First, a Declaration by Tobias Fieser states that he is employed by IPP International UG (IPP), which provides forensic investigation services to copyright owners by tracking, monitoring, and detecting copyright infringement over the internet. [Doc. No. 4-2, at p. 11.] According to Mr. Fieser, IPP monitors the BitTorrent file distribution network for the presence of plaintiff's copyrighted works. [Doc. No. 4-2, at p. 11.] Based on his review of forensic activity records and other forensic evidence, Mr. Fieser states that he was able to determine that IP address 99.26.127.96 was used to distribute "multiple pieces" of plaintiff's copyrighted movies. [Doc. No. 4-2, at p. 11.] Each of these pieces was recorded in digital files that are identified by a "Cryptographic Hash Value." [Doc. No. 4-2, at p. 12.] Software was then used to re-assemble and analyze the digital files to confirm that the files being distributed by defendant's IP address were pieces of plaintiff's copyrighted movies that were "fully playable." [Doc. No. 4-2, at p. 12.] According to Mr. Fieser's Declaration, Exhibit A to the Complaint [Doc. No. 1-2, at pp. 1-9] lists digital files of plaintiff's copyrighted works that were distributed using the defendant's IP address. [Doc. No. 4-2, at p. 12.]

Second, a Declaration by Susan B. Stalzer states that she is plaintiff's employee and is familiar with plaintiff's copyrighted movies. She was charged with reviewing the digital files enumerated on Exhibit A that were collected by IPP during its

forensic investigation to verify that the files did indeed contain plaintiff's copyrighted movies. Following this verification process, she used the American Registry for Internet Numbers (ARIN) to confirm that defendant's IP address was owned by AT&T U-verse at the times of the alleged infringements. [Doc. No. 4-2, at pp. 19-20.]

Third, a Declaration by Philip Pasquale states that he is a tech advisor for a firm that specializes in network security, data breaches, and the protection of secured information *5 transmitted across networks. [Doc. No. 4-2, at p. 15.] Mr. Pasquale was retained by plaintiff "to individually analyze and retain forensic evidence captured by IPP. . . ." [Doc. No. 4-2, at p. 15.] He used a program called Wireshark to review the contents of the digital files collected by IPP and was able to confirm a "transaction with 99.26.127.96 at 10/18/2018 04:17:22 UTC" [Doc. No. 4-2, at p. 15.] Based on his experience in other cases, Mr. Pasquale also represents that AT&T U-verse is the "only entity that can correlate the IP address to its subscriber and identify defendant as the person assigned the IP address 99.26.127.96 during the time of the alleged infringement." [Doc. No. 4-2, at pp. 15-16.]

The Complaint also alleges that geolocation technology by Maxmind Inc., "an industry-leading provider of IP address intelligence and online fraud detection tools," was used to determine that "defendant's IP address traced to a physical address in this District." [Doc. No. 1, at p. 2-3. *See also* Doc. No. 4-1, at pp. 12-13.] In this regard, the Complaint also states as follows: "In order to ensure that defendant's IP address accurately traced to the District, plaintiff inputted defendant's IP address into Maxmind's GeoIP database twice: first when it learned of the infringement and again, just prior to filing this lawsuit." [Doc. No. 1, at p. 3.]

"Some district courts in the Ninth Circuit have determined that a plaintiff identifies Doe defendants with sufficient specificity by providing the unique IP address assigned to an individual defendant on the day of the alleged infringing conduct, and by using 'geolocation technology' to trace the IP address to a physical point of origin." *See, e.g., Malibu Media, LLC v. Does 1-19*, 2012 WL 2152061, at 3 (S.D. Cal. June 12, 2012), and cases cited therein. Here, without explanation, plaintiff did not submit a declaration supporting its assertion that geolocation technology was used to ensure that the subscriber of the subject IP address was located in this District during the time of the alleged infringement.

**B. *Previous Steps Taken to Identify Defendant* .**

In its *Ex Parte* Application, defendant has represented that it has consulted with computer investigators and cyber security consultants and has searched sources available *6 to the public but is unable to obtain the name and address of the subscriber of IP address 99.26.127.96 for the time period in question. [Doc. No. 4-1, at pp. 13-14.] Through publicly available data, plaintiff is only able to connect IP address 99.26.127.96 to infringing activity on specified dates and identify the specific ISP associated with that IP address. [Doc. No. 4-1, at pp. 13-14.] Without a subpoena to the ISP requesting the name and address of the subscriber to the IP address in question, plaintiff will be unable to identify and serve defendant. [Doc. No. 4-1, at p. 17.]

The Court is also aware that the requirements of the Cable Privacy Act, 47 U.S.C. § 551, generally prohibit cable operators from disclosing personally identifiable information regarding subscribers without the prior written or electronic consent of the subscriber. 47 U.S.C. § 551(c)(1). A cable operator, however, may disclose such information if the disclosure is made pursuant to a court order, and the cable operator provides the subscriber with notice of the order. 47 U.S.C. § 551(c)(2)(B). Therefore, the information plaintiff seeks pursuant to a subpoena falls within an exception to the prohibition on disclosure within the Act.

Accordingly, based on the information provided in the *Ex Parte* Application and supporting Declarations, the Court finds that plaintiff did make a good faith effort to identify and serve the

casetext

defendant but is unable to do so without an Order from the Court allowing service of a subpoena on the ISP associated with the IP address in question.

### C. *Ability to Withstand a Motion to Dismiss* .

Under Federal Rule of Civil Procedure 12(b), a case can be dismissed for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(1), 12(b)(6). "Under the Copyright Act of 1976 ('the Act') a plaintiff may not 'institute [ ]' an action in federal district court 'until registration of the copyright claim has been made in accordance with this title.' 17 U.S.C. § 411(a)." *Berry v. Penguin Group (USA)*, *Inc.*, 448 F.Supp.2d 1202, 1202 (W.D. Wash. 2006). In order to state a viable claim for copyright infringement, a plaintiff must allege: (1) ownership of a valid copyright, and (2) a violation by the defendant of the copyright owner's exclusive rights *7 under the Copyright Act. *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004); 17 U.S.C. § 501(a).

As applied herein, the Complaint adequately alleges subject matter jurisdiction pursuant to Title 28, United Code, Sections 1331 (federal question) and 1338 (copyrights). The Complaint further alleges that plaintiff is either the registered owner or has pending registration applications for the adult motion pictures that defendant's IP address copied and distributed using the BitTorrent file distribution network without plaintiff's authorization. [Doc. No. 1 at pp. 1, 6]. Thus, it is apparent that plaintiff's Complaint could withstand a motion to dismiss for failure to state a claim.

Under Federal Rule of Civil Procedure 12(b), a complaint can also be dismissed for lack of personal jurisdiction over a defendant or for improper venue. Fed.R.Civ.P. 12(b)(2)&(3). To overcome a defendant's motion to dismiss under Federal Rule 12(b)(2) for lack of personal jurisdiction, a plaintiff need only make a *prima facie* showing of jurisdiction by presenting facts that, if true, would support a finding of personal jurisdiction over the defendant. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9 Cir. 1995). Personal jurisdiction can be established over a person who resides in the forum state. *Brayton Purcell LLP v. Recordon & Recordon*, 361 F.Supp.2d 1135, 1138 (N.D. Cal. 2005). In copyright infringement actions, venue is proper "in the district in which the defendant . . . resides or may be found." 28 U.S.C. § 1400(a).

Based on the record before the Court, plaintiff has not satisfied its burden to make a *prima facie* showing that the Complaint is likely to survive a motion to dismiss for lack of personal jurisdiction and/or improper venue. First, the Complaint alleges that geolocation technology was used to trace the offending IP address to a location in this District. Second, the Complaint alleges that the defendant resides here based on the results of geolocation technology. Third, the Complaint asserts that a substantial part of the alleged copyright infringement occurred in this District. However, plaintiff did not submit evidence to support these allegations. As a result, this Court cannot conclude plaintiff met its burden of making a *prima facie* showing that the Complaint would be able to survive a motion to *8 dismiss for lack of personal jurisdiction and/or improper venue. Without supporting evidence indicating the offending IP address was located within this District during the relevant time period, the Court finds that it would not be appropriate to permit plaintiff to serve AT&T Inc and/or AT&T U-verse with a Rule 45 subpoena.

### CONCLUSION

For the reasons set forth above, plaintiff's *Ex Parte* Application for Leave to Serve a Third Party Subpoena is DENIED without prejudice. [Doc. No. 4.] No later than ten (10) days from the date this Order is entered, plaintiff may file competent evidence based on personal knowledge that a reliable geolocation service was used to determine that the subject IP address was located within the Southern District of California during the relevant time period.

**IT IS SO ORDERED.** Dated: March 21, 2019

/s/_____

casetext

| | |
|---|---|
| Hon. Karen S. Crawford | United States Magistrate Judge |

